318 S.E.2d 463

**Norman E. WELLS, et al.**

v.

**CITY OF FAIRMONT, etc.**

**No. 15706.**

Supreme Court of Appeals of West Virginia.

July 12, 1984.

Dissenting Opinion July 23, 1984.

---

Rodney Merrifield, Roger D. Curry, Fairmont, for appellants.

George R. Higinbotham, Fairmont, for appellee.

PER CURIAM:

In this appeal from a summary judgment, three employees of the City of Fair-

mont allege that the Circuit Court of Marion County erred in permitting the City certain offsets against their overtime wage compensation awards.[1] Due to the insufficiency of the record, we are not able to determine whether the offset against each award was proper. Therefore, we remand the case for further development.

The plaintiffs were employed as operating technicians in the City's water filtration plant. The established employment schedule required the plaintiffs to work fifteen consecutive eight-hour days, followed by six days off. The plaintiffs sued the City claiming this work schedule resulted in their being denied overtime wages.

After the suits were filed, the City answered and filed a notice of offer of judgment under Rule 68(b) of the West Virginia Rules of Civil Procedure[2] and deposited with the circuit clerk: $2,281.56 for Wells; $2,527.53 for Pettit; and $4,034.84 for Manley. The plaintiffs, pursuant to Rule 68(b)(3), notified the City that they accepted tender as part payment and would proceed on the issue of damages.

Subsequently, the parties appeared before the court on the City's motion for summary judgment and a final order was entered on March 24, 1982. From the plaintiffs' brief, it appears that the circuit court was presented with a stipulation as to certain figures that represented total amounts of overtime owed to the three plaintiffs, i.e., Wells, $19,064.91; Pettit, $10,943.20, and Manley, $16,907.42.[3] Nei-

---

1. The City's brief indicates that each of the employees filed separate actions, which were subsequently consolidated. Plaintiffs Norman Wells, who died while this case was on appeal, and Robert Manley, had two causes of action in their complaints—one based upon violations of the overtime provisions of W.Va.Code, 21–5C–3; the other on a violation of their collective bargaining agreement with the City. The third plaintiff, Merle Pettit, filed suit only on a violation of the collective bargaining agreement. Merle Pettit died prior to our granting the appeal and Nancy Pettit, his executrix, was substituted as a party to this case. It is not apparent from the record upon which theory the court's final order was based.

2. Rule 68(b) of the West Virginia Rules of Civil Procedure provides:

*"Payment into court.*—A party defending against a claim may pay into court by depositing with the clerk a sum of money on account of what is claimed, or by way of compensation or amends, and plead that he is not indebted to any greater amount to the party making the claim or that the party making the claim has not suffered greater damages. The party making the claim may (1) accept the tender and have judgment for his costs, (2) reject the tender, or (3) accept the tender as part payment only and proceed with his action on the sole issue of the amount of damages."

3. However, the City, in its brief, states that these total "agreed calculations … represent the amounts claimed under Count 2 over the entire ten year period of the contracts. The Count 1, statutory claim, is substantially less than appel-

ther the factual stipulation nor the basis for calculating these figures is contained in the record before us.[4]

The court entered a summary judgment order which contained the following findings:

"1. That the defendant's Motion for Summary Judgment is granted as to amounts in excess of $2,281.56 for plaintiff Wells, $2,527.53 for plaintiff Pettit, and $4,034.84 for plaintiff Manley, and judgment is awarded in favor of the plaintiffs and against the defendant in these amounts.

"2. The defendant is entitled to offset total wages paid to plaintiffs during their entire period of employment with defendant against wages claimed due and owing by plaintiffs.

"3. The plaintiffs' attorneys, Rodney B. Merrifield and Roger Curry, shall not receive any attorneys fee from defendants for their representation of plaintiffs herein."

The sole issue argued on appeal is whether the City is entitled to offset the amount due for overtime with a specified amount of regular wages already paid. It is difficult to determine from the above-quoted portion of the court's order if this is the correct issue. The court's finding Number 2 permits the City to offset the *total* wages paid the plaintiffs against the claimed overtime, which was the only wage issue being litigated. It would be unreasonable to take the total regular pay made to the plaintiffs, over which there was no dispute, and use it as an offset against overtime pay owed.

However, as we pointed out earlier, the real problem is that we lack a record that gives us any calculations to determine how the ultimate overtime pay figures were derived. Nor do we have any figures or calculations that would enable us to determine what the City paid in wages and how any credit it wishes to offset is computed.

We have traditionally held, as illustrated by Syllabus Point 2 of *South Side Lumber*

Co. v. Stone Constr. Co., 151 W.Va. 439, 152 S.E.2d 721 (1967), that where a correct legal determination cannot be made because of the lack of an adequate record, we will remand the case:

"When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development."

*See also White v. Bordenkircher,* 169 W.Va. 239, 286 S.E.2d 686 (1982); *Young v. Young,* 158 W.Va. 521, 212 S.E.2d 310 (1975); *Painter Motors, Inc. v. Higgins,* 155 W.Va. 582, 185 S.E.2d 502 (1971).

Consequently, we remand this case to the Circuit Court of Marion County to permit the parties to more fully develop the record.

Remanded.

HARSHBARGER, Justice, dissenting:

I must dissent from the majority's decision to remand this case without deciding anything.

The record has sufficient material facts for us to work with: these plaintiffs were required to work a three-week rotation schedule consisting of fifteen consecutive eight-hour workdays followed by six consecutive days off, and they were paid fixed weekly salaries regardless of the number of hours they actually worked in any particular week, and received no overtime compensation of any kind. The city admitted that it was obligated to pay overtime compensation for those weeks in which the plaintiffs worked hours in excess of the statutory maximum.

The only dispute was whether the city could credit against its total liability for overtime compensation, the salaries paid in those weeks during which plaintiffs worked *less* than the statutory maximum number of hours. The city said that the full salary paid in such weeks, or some portion there-

---

lants' state in their brief." It is not possible from the circuit court's final order to determine how this issue was resolved.

**4.** This Court dealt with the calculation of overtime compensation in *Kucera v. City of Wheeling,* 158 W.Va. 860, 215 S.E.2d 216 (1975).

of, was intended as partial compensation for excess hours worked in other weeks, and the trial court agreed, permitting the city "to offset total wages paid to plaintiffs during their entire period of employment with defendant against wages claimed due and owing by plaintiffs."

I agree with the majority that neither the set-off amount nor the calculations employed to arrive at that figure is in the record. However, the principal question here is not whether the circuit court correctly calculated the amount to be deducted from the overtime compensation now due, but rather whether the court could make *any* such deduction. W.Va.Code, 21–5C–1, *et seq.* That is purely legal and can be resolved upon the facts stated above and the applicable statutes.

The purpose of our wage and hour law is to eliminate working conditions detrimental to minimum standards of living necessary for health, efficiency and general well-being of workers through the regulation of minimum wages and maximum hours of employment. *See* 48A Am.Jur.2d *Labor and Labor Relations* § 2210 (1979). In furtherance of this objective, our legislature provided in W.Va.Code, 21–5C–3(a), that:

> no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.[1]

This language is almost identical to the overtime compensation provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*,[2] after which our statute is patterned. *See Kucera v. City of Wheeling*, 158 W.Va. 860, 869, 215 S.E.2d 216, 221 (1975) (Sprouse, J., dissenting).

Federal courts have concluded that the federal act takes the workweek[3] as the standard and inflexible work unit for computing overtime compensation. *See, e.g., Black v. Roland Electrical Co.*, 68 F.Supp. 117, (D.Md.1946), *modified on other grounds*, 163 F.2d 417 (4th Cir.1947), *cert. denied*, 333 U.S. 854, 68 S.Ct. 729, 92 L.Ed. 1135 (1948); *United States v. Universal C.I.T. Credit Corp.*, 102 F.Supp. 179 (D.C. Mo.), *aff'd*, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952). Consequently, it has been held that the act does not permit an employer to average hours worked in two or more workweeks in order to avoid paying overtime. *Luther v. Z. Wilson, Inc.*, 528 F.Supp. 1166 (S.D.Ohio 1982); *Mitchell v. Gatlin*, 179 F.Supp. 260 (S.D.Miss.1959). "Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40." 29 C.F.R. § 778.104 (1982).

In addition, those courts have concluded that allowing an employer credit for wages paid in non-overtime workweeks violates the concept of the workweek as the standard of time for computing statutory overtime, and that the amount of compensation due an employee under the act at each pay

---

**1.** During the employment period for which plaintiffs sought to recover compensation, the statutory maximum regular workweek varied from forty-six to forty hours per week. *See* 1980 W.Va.Acts, ch. 130; 1976 W.Va.Acts, ch. 64; 1974 W.Va.Acts, ch. 57.

**2.** Section 7 of the Fair Labor Standards Act, 29 U.S.C. § 207, currently provides, in pertinent part:

"(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours

above specified at a rate not less than one and one-half times the regular rate at which he is employed ...."

**3.** The federal act does not define "workweek", but the term is taken to mean seven consecutive twenty-four-hour periods. *See United States v. Universal C.I.T. Corp., supra; Roland Electrical Co. v. Black*, 163 F.2d 417 (1947). W.Va.Code, 21–5C–1(a) defines "workweek" as "a regularly recurring period of one hundred sixty-eight hours in the form of seven consecutive twenty-four hour periods, [which] need not coincide with the calendar week, and may begin any day of the calendar week and any hour of the day."

period must be calculated on the basis of a single workweek. *Black v. Roland Electrical Co., supra. See Freeman v. Blake,* 84 F.Supp. 700 (D.Mass.1949); *Hutchinson v. William G. Barry, Inc.,* 50 F.Supp. 292 (D.Mass.1943). *See also United States v. Klinghoffer Bros.,* 285 F.2d 487 (2d Cir. 1960); *Luther v. Z. Wilson, Inc., supra.*

Employers have been allowed "credits" against the obligation to pay statutory overtime for extra work in a workweek, only when an employer has actually paid some portion of overtime due an employee under the statute in the same workweek in which the overtime was earned, *see Bay Ridge Operating Co., Inc. v. Aaron,* 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502, *reh. denied,* 335 U.S. 838, 69 S.Ct. 10, 93 L.Ed. 389, *reh. denied,* 335 U.S. 838, 69 S.Ct. 10, 93 L.Ed. 389 (1948); *Biggs v. Joshua Hendy Corp.,* 183 F.2d 515 (9th Cir.1950); or when, through innocent mistake or employee fraud, an employer has paid more overtime than required by statute. *See Burke v. Mesta Machine Co.,* 79 F.Supp. 588 (D.C. Pa.1948); *Harrington v. Empire Const. Co.,* 71 F.Supp. 324 (D.Md.1947), *modified on other grounds,* 167 F.2d 389 (4th Cir. 1948). *See also, Bable v. T.W. Phillips Gas and Oil Co.,* 287 F.2d 21 (3d Cir.1961); *Futrell v. Columbia Club, Inc.,* 338 F.Supp. 566 (S.D.Ind.1971); *Boyd v. Panama Canal Co.,* 160 F.Supp. 50 (Canal Zone 1958).

These well-reasoned principles are applicable to our state wage and hour law. In *Kucera v. City of Wheeling, supra,* we intimated that W.Va.Code, 21–5C–3(a) takes the workweek as the standard for determining overtime. I believe that our legislature intended such compensation to be computed with reference to each workweek, and I see no good reason for the majority to refuse to so hold, here and now.

I would hold that W.Va.Code, 21–5C–3(a) does not authorize consideration in the overtime computation, of wages paid in other, non-overtime workweeks, and I would reverse the circuit court.

Secondly, I cannot agree with the majority's remand of this case without establishing proper mechanics for figuring overtime. Litigant and judicial economy re-

quires that we remand with sufficient instruction to allow triers to do their work properly, safe from other appeals.

Although W.Va.Code, 21–5C–3(a) specifies that overtime compensation is to be paid "at a rate not less than one and one-half times the regular rate" of pay, the statute provides no formula to be used to compute overtime pay. This omission was no doubt intended to allow courts flexibility in deciding employees' entitlement to overtime, case-by-case, avoiding imposition of rigid rules not accommodating the variety of wage agreements covered by the act. *See Burke v. Mesta Machine Co.,* 79 F.Supp. 588 (D.C.Pa.1948). However, as there is very little West Virginia precedent that would guide a trial court, I believe the majority's refusal to instruct simply serves to delay even further a fair and final adjudication of these claims.

Critical in computing statutory overtime is finding a "regular rate" of pay. Federal courts have generally described regular rate as "the hourly rate actually paid for the *normal non-overtime workweek.*" *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 40, 65 S.Ct. 11, 13, 89 L.Ed. 29, 33 (1944). (Emphasis supplied.) When an employee works solely on an hourly rate basis, the hourly wage is clearly the regular rate, and overtime compensation is one and one-half times that rate. *Tobin v. Alma Mills,* 92 F.Supp. 728 (W.D.S.C.1950), *modified on other grounds,* 192 F.2d 133 (4th Cir.1951). *See also* 29 C.F.R. § 778.110 (1982). However, our wage and hour law does not apply just to hourly workers. Like the Fair Labor Standards Act, W.Va. Code, 21–5C–1, *et seq.* recognizes that there are many different employment compensation methods, including payment of lump-sum salaries and compensation on piecework or commission bases; and it requires only that an employee's total compensation be translated into an hourly rate to determine overtime compensation due in each workweek. *See 149 Madison Avenue Corp. v. Asselta,* 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432, *modified on other grounds,* 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947); *United States v. Rosenwasser,* 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945).

This translation must be made with great deference to the laudatory purposes of wage and hour laws. Consequently, it is generally accepted that determination of a regular rate cannot be controlled by declarations of the parties: the rate must be based on what actually happens in the workplace. *See Bay Ridge Operating Co., Inc. v. Aaron*, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502, *reh. denied*, 335 U.S. 838, 69 S.Ct. 10, 93 L.Ed. 389, *reh. denied*, 335 U.S. 838, 69 S.Ct. 10, 93 L.Ed. 389 (1948); *149 Madison Ave. Corp. v. Asselta, supra.* "Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." *Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424–425, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705, *reh. denied*, 326 U.S. 804, 66 S.Ct. 12, 90 L.Ed. 489 (1945).

All of these principles are applicable to our wage and hour law. I do not agree, however, with the formula the federal courts have developed for establishing salaried workers' regular hourly rates. They hold that the regular rate of an employee paid a fixed weekly salary is determined by dividing his or her weekly wage by the number of hours it is intended to compensate in a particular workweek, no matter how many. *Overnight Motor Transportation Co., Inc. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, *reh. denied*, 317 U.S. 706, 63 S.Ct. 76, 87 L.Ed. 563 (1942). *See 149 Madison Avenue Corp. v. Asselta, supra; Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100 (9th Cir.1975).

Thus, if it is understood that a fixed weekly salary is intended to compensate an employee for a regular workweek of thirty-five hours, the regular rate is determined by dividing the weekly wage by thirty-five. An employee who works in excess of thirty-five hours, but less than the legal maximum in any workweek, is entitled to be compensated at his or her regular hourly rate for every excess hour worked, up to the statutory maximum of forty hours; and for every hour worked in excess of the statutory maximum, the employee should get statutory overtime at a rate of one and one-half times the regular hourly rate. 29 C.F.R. § 778.113(a) (1982).

And when the weekly salary is intended for a regular workweek of fifty hours, the federal rule determines the regular rate by dividing the weekly wage by fifty. A worker is entitled to overtime for each hour worked in excess of the statutory maximum of forty hours, but is deemed to have already been compensated at the regular rate for the first fifty hours of work and, as a consequence, is entitled to recover an overtime premium of fifty percent, or one-half times the regular rate, for the ten hours worked in excess of the statutory maximum. Hours worked in excess of the agreed-upon regular workweek (in this example a fifty-hour week) are compensated at a rate of one and one-half times the regular rate. *See, e.g., Brennan v. Valley Towing Co., Inc., supra; Bumpus v. Continental Baking Co.*, 124 F.2d 549 (6th Cir.), *cert. denied*, 316 U.S. 704, 62 S.Ct. 1305, 86 L.Ed. 1772 (1942); *Keen v. Mid-Continent Petroleum Corp.*, 63 F.Supp. 120 (N.D.Iowa 1945), *affirmed*, 157 F.2d 310 (8th Cir.1946).

Absent an agreed-upon regular workweek, these authorities presume that a weekly salary is intended to compensate for all hours actually worked, and the regular rate is found by dividing the weekly wage by the number of worked hours in a particular workweek.[4] An employee is deemed to have already been compensated at the regular rate for all hours worked, but is entitled to overtime at a rate of one-half times the regular hourly rate for all hours worked in excess of the statutory maximum. *Bay Ridge Operating Co., Inc. v. Aaron, supra; Overnight Motor Transportation Co., Inc. v. Missel, supra; General Electric Co. v. Porter*, 208 F.2d 805 (9th Cir.1953), *cert. denied*, 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097, *cert. denied*, 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115 (1954); *Rau v. Darling's Drug Store, Inc.*, 388 F.Supp. 877 (W.D.Pa.1975).

---

**4.** In all circumstances, it is understood tht the regular rate obtained must meet the requirements of the minimum wage provisions of the federal act. 29 U.S.C. § 206.

Thus, these rules permit an employer to diminish an employee's regular rate and, consequently, the amount of overtime to which he is entitled, by spreading the weekly wage over more than the statutory maximum number of work hours in a single week. This produces an absurd situation in which the longer a salaried employee works in any given workweek, the less his or her regular hourly rate and, as a result, the less is the overtime pay rate.[5] *See Overnight Motor Transportation Co., Inc. v. Missel, supra; General Electric Co. v. Porter, supra.*

Our legislature could not have intended such a result. It designated a forty-hour workweek to be a safe, healthful and productive work unit, and provided that hours worked in excess of that unit be compensated at a substantially higher rate, both to pay for the extra wear and tear of an excessive workweek, and as a way to spread employment. I cannot believe that the legislature intended to allow employers to skirt the objectives of the statute by stretching fixed weekly salaries over workweeks that have more hours than the statutory maximum, *see Rau v. Darling's Drug Store, Inc., supra,* and then to allow overtime to be calculated on those thinner average hourly rates.

Consequently, I would require this trial court to compute the amount of statutory overtime due the plaintiffs by first dividing each employee's weekly salary by the statutory maximum number of non-overtime workweek hours (now forty) to establish the hourly rate, and then compute overtime for any week in which the employee worked in excess of the lawful maximum, at a rate of one and one-half times that regular hourly rate. The amount the plaintiffs would be entitled to recover would, of course, be subject to the two-year limitations period specified in W.Va.Code, 21–5C–8(d).

Finally, I dissent from the majority's decision because it does not deal with whether plaintiffs are entitled to reasonable attorney fees. W.Va.Code, 21–5C–8(c) provides, in part, that "[t]he court in any action brought under this article *may*, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant." (Emphasis supplied.) This language is identical to that of Section 12 of the West Virginia Wage Payment and Collection Act, W.Va.Code, 21–5–1 *et seq.* (1981 Replacement Vol.), which we discussed in *Farley v. Zapata Coal Corp.*, 167 W.Va. 630, 281 S.E.2d 238 (1981), at Syllabus Point 3:

> An employee who succeeds in enforcing a claim under W.Va.Code Chapter 21, article 5 should ordinarily recover costs, including reasonable attorney fees unless special circumstances render such an award unjust.

We stated, 167 W.Va. at 639, 281 S.E.2d at 244:

> The statute provides that the court "may" assess costs of the action, including reasonable attorney fees against the defendant. We feel that costs, including attorney fees, should be awarded to prevailing plaintiffs as a matter of course in the absence of special circumstances which would render such an award unjust. Both the Wage Payment and Collection Act and our mechanics' lien statutes are designed to protect the laborer and act as an aid in the collection of compensation wrongfully withheld. Working people should not have to resort to lawsuits to collect wages they have earned. When, however, resort to such action is necessary, the Legislature has said that they are entitled to be made whole by the payment of wages, liquidated damages, and costs, including attorney fees. If the laborer were required to pay attorney fees out of an award intended to compensate him for

---

**5.** If an employee is paid $200 per week for a standard forty-hour workweek, his regular rate of pay is $5.00 per hour. When the employee works fifty hours in any workweek, he is entitled to overtime at a rate of $7.50 per hour, or a total of $75. Under the federal formula, however, if the employee regularly works fifty hours per week, his regular rate of pay, as found by dividing $200 by fifty hours, is $4 per hour. He is deemed to have already been compensated on a regular-time basis for the ten hours worked in excess of the statutory maximum, and is entitled to overtime of only $2 per hour, or a total of $20.

services performed, the policy of these statutes would be frustrated. The issue, therefore, is not whether working people who assert their legal rights under W.Va.Code Chapter 21, article 5 are entitled to attorney fees, but what a reasonable attorney fee would be under the facts and circumstances of the particular case.

I would hold that the discretion of a circuit court to award attorney fees in wage and hour suits is limited, absent special circumstances, to deciding the reasonable amount of such fees. The court here made no finding that would justify denying attorney fees, and I would require him to award them.

I am authorized to state that Justice McGRAW joins with me in this dissent.